[No. A060421. First Dist., Div. Four. Oct. 29, 1993.]

THE PEOPLE, Plaintiff and Respondent, v.
CARL LEE SIMINGTON, Defendant and Appellant.

## COUNSEL

Kim Malcheski, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Ronald S. Matthias and Martin S. Kaye, Deputy Attorneys General, for Plaintiff and Respondent.

**REARDON, J.**—Appellant Carl Lee Simington was charged with attempted murder (Pen. Code, §§ 187, 664—count 1), assault with a deadly weapon

(Pen. Code, § 245, subd. (a)(1)—count 2), and battery with serious bodily injury (Pen. Code, § 243, subd. (d)—count 3). He was acquitted of the attempted murder charge, as well as the lesser offense of attempted voluntary manslaughter. He was found guilty as charged in counts 2 and 3, and the jury also found true as to each count allegations that appellant personally used a deadly weapon and personally inflicted great bodily injury. He was sentenced to seven years in state prison and appeals, contending (1) that the prosecution engaged in misconduct and (2) that the trial court committed instructional error. We affirm.

## I. FACTS

On May 2, 1992, the appellant, Carl Lee Simington, stabbed the victim, Marshall Murray, with a knife. The stabbing resulted in a chest wound about one and a half inches wide and two inches deep. Murray underwent surgery and spent four days in the hospital. According to medical testimony, Murray's lung was "probably" punctured as a result of the stabbing, and his lung continues to collapse.

Murray, five feet seven inches and one hundred thirty-eight pounds, testified that he was replacing a clutch cable on a car in front of his residence. Appellant, six feet four inches and two hundred ten pounds, approached and demanded payment of a $20 debt. Murray, who knew appellant from the neighborhood, told appellant that he had no money but expected to get paid when he completed the car repair. An argument ensued with appellant demanding immediate payment. When Murray replied " 'Fuck, no,' " appellant drew back his jacket, pulled out a knife, and stabbed Murray in the chest. Murray, who was holding the clutch cable, backed up. He did not realize that he had been stabbed. Appellant stated, " 'go ahead and use [the clutch cable].' . . . 'I'll cut your heart out.' "

Murray retreated to a corner market to call the police. When the police arrived, appellant fled but was apprehended near the scene. The police recovered the knife that had been discarded by appellant underneath a car. The knife contained human blood. When arrested, appellant was wearing an empty knife sheath.

Appellant testified in his own defense. According to appellant, Murray owed appellant money for cocaine that Murray was to have bought for appellant. An argument ensued and Murray cursed appellant. Murray was aggressive and appellant thought that Murray was high on cocaine. Murray had a clutch cable in his hand. Fearing that Murray would hit him with the clutch cable, appellant withdrew a knife from a sheath in his waist band and

made a motion with the knife in an effort to "ward [Murray] off." He was not sure that he had stabbed Murray. He testified that he did not intend to kill or injure Murray. He discarded the knife because he did not want to get stopped by the police for carrying a knife.

## II. DISCUSSION

### A. *Prosecutorial Misconduct*

Appellant initially contends that the prosecutor committed misconduct in closing argument by (1) appealing to the passion and prejudice of the jury and (2) impugning the integrity of defense counsel.

#### 1. *Appeal to passion and prejudice.*

In his closing argument, the prosecutor stated: "Let me ask you to do something. I want you to put yourself—I want you to imagine something. I want you to imagine after you finished your jury duty, after you have done your time here in the Hall of Justice and are released to go home, you go out the door and you're heading towards Market Street and you're on foot and you're walking home and Mr. Big steps out in front of you, and he's a lot bigger than you are. If you are under 5'7 and he's 6'4, 210 pounds, if you are six foot—[¶] [DEFENSE COUNSEL]: Objection; undue appeal to prejudice, Your Honor. [¶] THE COURT: Overruled. [¶] [PROSECUTOR]:—or taller. Then if you can picture somebody who's nine inches taller and 60 pounds heavier than you, somebody who's 6'10 and 210 pounds maybe, and that person has a dagger out in front, right out where you can see it, not in the back of his waist or on the side but right out where you can see it and he says, 'Give me $20.00.' All right. [¶] Whether there's a legitimate debt, an illegitimate debt or you don't owe him a dime, it doesn't matter. None of that matters. He says, 'Give me $20.00.' You say 'No,' and he stabs you. You go to the hospital and you have spent four days in the hospital and you got a tube in your chest, flat on your back and you come to court."

██ It is improper for the prosecutor to appeal to the passion and prejudice of the jury in closing argument during the guilt phase of trial. (*People* v. *Pensinger* (1991) 52 Cal.3d 1210, 1250 [278 Cal.Rptr. 640, 805 P.2d 899].) In *Pensinger*, the defendant was charged with an assortment of offenses including kidnapping and murder of a child. In closing argument, the prosecutor stated: " 'Suppose instead of being Vickie Melander's kid [the victim] this had happened to one of your children.' " (*Ibid.*) The court found the prosecutor's remark to be an improper appeal to the jury's passion and prejudice. Similarly, in *People* v. *Jones* (1970) 7 Cal.App.3d 358 [86

Cal.Rptr. 516], the defendant was charged with assaulting a motorcyclist. The prosecutor's remarks in argument "to the effect that the sons of the jurors and their girl friends dare not ride motorcycles into an area where the appellant is located, because he reacts seriously," were held to be misconduct. (*Id.*, at p. 363.) The court described the remarks as "a crude appeal to the fears and emotions of the jurors . . . ." (*Ibid.*) In *People* v. *Fields* (1983) 35 Cal.3d 329, 362 [197 Cal.Rptr. 803, 673 P.2d 680], the prosecutor invited the jury to "view the case through the eyes of the victim." This invitation was deemed misconduct since it encouraged jurors "to depart from their duty to view the evidence objectively . . . ." (*Ibid.*)

■ Here, the prosecutor asked the jurors to place themselves in the position of an innocent victim who is assaulted with a knife and sustains serious injuries. Under the foregoing authorities, we conclude that the remarks constituted an improper appeal to the passion and prejudice of the jury and the objection, which was timely and made on the proper grounds, should have been sustained. We also conclude, however, that the error was harmless.

Significantly, in both *Pensinger* and *Jones*, upon which appellant primarily relies, and *Fields*, the court found the misconduct to be nonprejudicial. (*Pensinger, supra*, 52 Cal.3d at pp. 1250-1251; *Jones, supra*, 7 Cal.App.3d at pp. 363-364; see *Fields, supra*, 35 Cal.3d at pp. 362-363; see also *People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243].) Here, too, it cannot be said that it is reasonably probable that a different result would have been reached in the absence of these remarks. (*Watson, supra*, at p. 836; *Jones*, at p. 365.)

It must be remembered that appellant was charged in count 1 with attempted murder. He was acquitted of this charge as well as the lesser offense of attempted voluntary manslaughter. Each of these offenses requires proof of a specific intent to kill. (*People* v. *Dillon* (1983) 34 Cal.3d 441, 452 [194 Cal.Rptr. 390, 668 P.2d 697]; *People* v. *Van Ronk* (1985) 171 Cal.App.3d 818, 824 [217 Cal.Rptr. 581].) By its verdict acquitting appellant of these two offenses, the jury must have concluded that the evidence of a specific intent to kill was insufficient. In declining to convict, it would appear that the jury was unaffected and unmoved by the prosecutor's improper appeal to place themselves in the position of an attempted murder victim. In short, had the appeal to passion and prejudice been effective, one would have expected the jury to find appellant guilty of attempted murder or, at a minimum, attempted voluntary manslaughter. Instead, the jury acquitted appellant of these offenses.

In any event, as to the felony assault and felony battery of which appellant was convicted, including the enhancements, the evidence was overwhelming. (See *People* v. *Fields, supra*, 35 Cal.3d at p. 363; *People* v. *Jones, supra*,

7 Cal.App.3d at p. 365.) Appellant did not deny stabbing the victim. The wound resulting from the stabbing, approximately a half-inch wide, two inches deep, and "probably" puncturing the lung, certainly constituted serious bodily injury and was entirely inconsistent with appellant's version depicting a minor jabbing action to simply "ward [the victim] off." Further, given the disparity in size and the fact that, according to appellant, the victim was not actually swinging the cable at him when the stabbing occurred, the theory of self-defense presented by appellant was extremely weak.

Finally, the prosecutor's remark "was an isolated one and it was not repeated." (*People* v. *Pensinger, supra,* 52 Cal.3d at p. 1250.)

Accordingly, "[w]e find no reasonable probability that the prosecutor's appeal to the jurors' sympathy for the victim affected the verdict rendered. [Citation.]" (*People* v. *Fields, supra,* 35 Cal.3d at p. 363.)

### 2.  *Impugning the integrity of defense counsel.*

█   Appellant also contends that the prosecutor made certain disparaging remarks about defense counsel. However, there was no objection made to these remarks in the trial court. Where there has been no objection, "defendant is deemed to have waived the objection and the point cannot be raised on appeal." (*People* v. *Green* (1980) 27 Cal.3d 1, 27 [164 Cal.Rptr. 1, 609 P.2d 468], and cases cited therein.)

Appellant's contention that an objection would have been futile lacks merit. He argues that the overruling of a prior objection to a different remark and on different grounds eliminated the requirement for an objection. We disagree. Having an objection to a prosecutor's remark appealing to passion and prejudice overruled in no way foreclosed or prevented the obtaining of relief upon proper objection to a different remark allegedly disparaging defense counsel.

Since no objection was made and since an admonition would have cured any harm, the issue has not been preserved. (See *People* v. *Green, supra,* 27 Cal.3d at p. 34.)

### B.  *Instructional Errors*

### 1.  *Failure to define assault.*

█   Appellant contends, and the Attorney General concedes, that the trial court erred in failing to define assault (CALJIC No. 9.00) in its instructions

to the jury on the crime of assault with a deadly weapon (count 2). We agree. (See *People* v. *Valenzuela* (1985) 175 Cal.App.3d 381, 393 [222 Cal.Rptr. 405]; *People* v. *McElheny* (1982) 137 Cal.App.3d 396, 403-404 [187 Cal.Rptr. 39].) This instructional error, however, was nonprejudicial.

In *People* v. *Sedeno* (1974) 10 Cal.3d 703 [112 Cal.Rptr. 1, 518 P.2d 913], our Supreme Court held that the failure to give an instruction is harmless error if "the factual question posed by the omitted instruction was necessarily resolved adversely to the defendant under other, properly given instructions." (*Id.*, at p. 721.) The omitted instruction would have informed the jury that an assault is "an unlawful attempt coupled with the present ability, to apply physical force upon the person of another . . . ." (CALJIC No. 9.00.) Under proper instructions, the jury found that the stabbing of the victim by appellant constituted a battery with serious bodily injury (count 3). An assault is "an attempt to commit a battery." (*People* v. *Rocha* (1971) 3 Cal.3d 893, 899 [92 Cal.Rptr. 172, 479 P.2d 372].) Since the jury found appellant guilty of the completed crime, i.e., battery, it "necessarily resolved" that he attempted to commit the battery, which was the "factual question posed by the omitted instruction . . . ." (*People* v. *Sedeno, supra*, at p. 721.) Accordingly, under *Sedeno*, the error was harmless.

2. *Failure to define deadly weapon.*

■ Appellant also contends that the trial court erred in failing to define "deadly weapon" in its instructions to the jury on the crime of assault with a deadly weapon. Again, we conclude that the omission was harmless under *People* v. *Sedeno, supra*, 10 Cal.3d 703.

The jury was instructed that in order to convict it was required to find that the assault was with "a deadly weapon or instrument, to wit, a knife . . . ." The omitted definition would have informed the jury that a "deadly weapon is any object, instrument, or weapon which is used in such a manner as to be capable of producing, and likely to produce, death or great bodily injury. [¶] Great bodily injury refers to significant or substantial bodily injury or damage; it does not refer to trivial or insignificant injury or moderate harm." (CALJIC No. 9.02.) As to both counts 2 and 3, it was alleged that appellant personally inflicted great bodily injury in the commission of the respective felony assault and felony battery. With respect to these enhancement allegations, the jury was instructed: " 'Great bodily injury' as used in this instruction means a significant or substantial physical injury. Minor or moderate injuries of a temporary nature do not constitute great bodily injury and are not sufficient." The jury found the great bodily injury enhancement to be true as to each offense.

That a knife was the object used to inflict the injuries was undisputed and admitted by appellant at trial. The "factual question posed by the omitted instruction" was whether the knife was an object or instrument "capable of producing, and likely to produce, death or great bodily injury." By its verdicts, the jury found under proper instructions that appellant's use of the knife *did* inflict "great bodily injury." The jury, therefore, "necessarily resolved" that appellant's use of the knife was *capable* of inflicting great bodily injury and thus resolved the factual issue posed by the omitted instruction.

Accordingly, the failure to define deadly weapon was harmless error. (*People* v. *Sedeno*, *supra*, 10 Cal.3d at p. 721.)

### III. CONCLUSION

Judgment affirmed.

Poché, Acting P. J., and Perley, J., concurred.

A petition for a rehearing was denied November 23, 1993, and appellant's petition for review by the Supreme Court was denied January 26, 1994.